UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **COSMETIC WARRIORS LIMITED,** | Civil Action No. 13-1697 (WJM) |
| Plaintiff, | |
| v. | |
| **LUSH DAY SPA, LLC,** | **MEMORANDUM OPINION & ORDER** |
| Defendants. | |

**FALK, U.S.M.J.**

This is a trademark and unfair competition case. Plaintiff, Cosmetic Warriors Limited ("CWL"), is a UK-based beauty products manufacturer that uses the mark "LUSH" on its products. CWL products are sold in retail stores across the United States as well as via its catalogs and on the Internet. Defendant, Lush Day Spa ("LDS"), is a day spa in Ramsey, New Jersey, that provides traditional salon and spa services, such as hair styling, massage, aromatherapy, and nail treatments. It apparently markets and advertises its services under the mark "LUSH DAY SPA."

CWL filed its Complaint on March 19, 2013, asserting both federal and New Jersey state trademark infringement and unfair competition claims. The crux of the Complaint is that LDS's use of the LUSH Day Spa mark is confusing when compared to CWL's LUSH mark.

LDS has counterclaims for: (1) a declaratory judgment of non-infringement on the grounds of equitable priority—i.e., that it has priority over CWL with respect to the use of

the word "lush" in connection with the specific services it offers; and (2) cancellation of CWL's registration on the grounds that, *inter alia*, LDS has senior rights to use the "lush" mark in connection with its services.

Presently, the parties have a dispute over an interrogatory answer. LDS would like more specific response to its interrogatory number 9.[1] The parties claim to have met and conferred and failed to resolve the issue. The Undersigned authorized letter briefing because the dispute allegedly involves questions of privilege. Since then, five letters have been received. [*See* CM/ECF Nos. 26, 30-34.] Having considered the parties' letter submissions, LDS's request to compel a more specific response is **GRANTED**.

## **DISPUTE**

**Interrogatory 9:**

The disputed question states the following:

> Describe how you first became aware of the [Lush Day Spa], including in your description a complete account of the events that lead to your becoming aware of [LDS], the identity of the persons who first informed you of the existence of the LDS and the date on which you first became aware of LDS.

LDS contends CWL's response to this question is important to its defense and its counterclaims. LDS's litigation position is, among other things, that it has priority over CWL in the relevant geographic areas with respect to the services it offers. In simple terms, LDS believes that CWL's contacts and sales in New Jersey were minimal and limited to beauty products at the time that LDS commenced operating, and that LDS essentially beat CWL to the punch in New Jersey for the different spa-related services it offers. LDS's defense is premised on this theory of priority, as well as delay-based defenses such as laches and the statute of limitations. LDS contends that the information

---

[1] The parties also had a dispute over CWL's response to LDS's interrogatory 10, but resolved it at an in-person conference before the Undersigned on October 2nd.

requested in interrogatory 9 bears on its laches and statute of limitations defenses because they are based on CWL's "constructive knowledge" and when CWL knew or reasonably should have known of LDS's alleged infringement.

CWL has provided some information in response to the question. It has identified that it learned of LDS in late February to early March 2012; that outside counsel, John A. Clifford, Esq. of Merchant & Gould, P.C., is the individual who located the website; and that Mr. Clifford located the site in connection with an investigation related to different alleged infringer.

LDS wants more information. It wants to know *how* LDS was identified. In other words, how was the internet search conducted. What were the details of the investigation? What database was searched and what search terms were used? Was it a basic "Google" search? LDS argues that if a simple "Google" search revealed the existence of LDS and its supposed infringement, then that search could have been performed much earlier. And if it could have been performed much earlier, then, according to LDS, it follows that CWL had constructive knowledge of the alleged infringement at an earlier date.

CWL has refused to provide any further information about Mr. Clifford's investigation claiming that it is protected by the work-product doctrine.

**Decision**

As is explained below, the information requested in interrogatory nine is relevant and not protected by the work-product doctrine. CWL is directed to more fully respond to the question.

Interrogatory nine seeks the details of Mr. Clifford's investigation, the existence of which was made known in CWL's original answer to the disputed interrogatory. CWL contends this is protected attorney work-product. However, Mr. Clifford's investigation was of a separate, *non-party*'s supposed infringement; he apparently simply stumbled onto LDS during that investigation. Because of the separate investigations, the question becomes whether work-product protection attaches when the information was generated

in anticipation of a different, unrelated litigation.[2] There are three different views:

>  (1) that the work product privilege applies only if the materials were prepared in anticipation of the very suit before the Court;
>
>  (2) that there is perpetual protection extending for any future case, whether related or unrelated;
>
>  (3) work product protection applies to materials generated in connection with a previous case when the second action is "closely related."

See Jaroslawicz v. Engelhard Corp., 115 F.R.D. 515, 518 n.2 (D.N.J. 1987) (summarizing views) (citing Levingston v. Allis-Chalmers Corp., 109 F.R.D. 546 (S.D. Miss. 1985)).

In *dicta*, the Third Circuit has endorsed the "closely related" view. That is, when work-product is claimed on information generated in connection with a prior proceeding, there must be a sufficiently close relationship between the prior suit and the present action to justify work-product protection. See In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979). This view has been followed consistently in this District. See, e.g., La. Mun. Police v. Sealed Air, 253 F.R.D. 300, 309 n.3 (D.N.J. 2008); Maldonado v. New Jersey, 225 F.R.D. 120, 131 (D.N.J. 2004); Maertin v. Armstrong World Indus., 172 F.R.D. 143 (D.N.J. 1997); Jaroslawicz, 115 F.R.D. at 518.

Here, LDS claims that this suit is not closely related—and in fact has nothing whatsoever to do with—the other litigation for which Mr. Clifford was performing an investigation. Thus, it contends that work-product protection does not apply. Alternatively, it claims that it has a substantial need for the information that should pierce any protection.

CWL argues for option two above—that work product protection is perpetual. It

---

[2] Work product protection applies for materials prepared or obtained in anticipation of litigation and for litigation purposes. See, e.g., In re Gabapentin Patent Litig., 214 F.R.D. 178, 184 (D.N.J. 2003). The parties do not really discuss whether Mr. Clifford's investigation was attorney work-product as it relates to the first infringer, essentially presuming that it was. Although the Court believes the investigation would likely qualify, there is no need to conclusively determine it given the decision reached herein.

relies on a Supreme Court case from the 1980s to support this argument.[3] However, the case addressed the issue of requests under the Freedom of Information Act, 5 U.S.C. § 522, and work product and did not squarely address the question presented here.

      LDS is correct that the "closely related" test applies. And under that test, CWL does not carry its burden to show that the cases are closely related, and that work product protection should attach. See In re Grand Jury Proceedings, 604 F.2d at 803 (party asserting doctrine has burden to show it applies). The cases that generally carry work-product protection over from one proceeding to a second often have much more in common than is alleged here. See, e.g., In re Grand Jury, 604 F.2d at 805 (protection for documents created in connection with SEC investigation applied to subsequent grand jury investigation); Jaroslawicz, 115 F.R.D. at 517 (protection for documents created in connection with SEC investigation carried over to subsequent federal securities litigation). CWL does little other than state, in a perfunctory way, that the prior case Mr. Clifford was investigating involved alleged trademark infringement and that LUSH marks were at issue. However, no authority is cited that suggests that investigating one trademark infringer makes it closely related to another.

---

[3] CWL believes that in FTC v. Grolier, 462 U.S. 19 (1983), the Supreme Court endorsed perpetual protection for work-product materials. Grolier involved a discrete question of whether work-product protection available under the FOIA would end when the specific litigation ended, or whether it would continue beyond that proceeding. The Supreme Court interpreted a specific exemption in the FOIA to provide for essentially perpetual protection. It did not decide, however, the question of the temporal scope of work-product protection under Rule 26 in civil litigation, expressly noting that "Rule 26(b)(3) does not in so many words address the temporal scope of work-product immunity and a review of the Advisory Committee's comments no express concern for that issue." Id. at 26. Moreover, the Supreme Court specifically stated that its decision was "not relying exclusively on any particular construction of Rule 26(b)(3)." Id. at 26. Since Grolier, courts around the country have continued to treat the question as an open one. In the absence of binding authority, this Court follows In re Grand Jury and the many cases from this District applying the closely related test.

CWL has not established that work-product protection is applicable in this case. Because the relevance of the information is clearly explained by LDS, and because the information is not protected by the work-product doctrine, LDS's request to compel is **GRANTED**.[4]

**SO ORDERED**.

s/Mark Falk
**MARK FALK**
**United States Magistrate Judge**

---

[4] Since work-product protection does not apply in this case, there is no need to consider whether LDS has a substantial need for the information and whether it has shown an inability to obtain it from another source. See, e.g., In re Neurontin Antitrust Litig., 2011 U.S. Dist. LEXIS 6977 a *69-70 (D.N.J. Jan. 25, 2011). However, were the Court to consider the question, it would likely conclude that LDS could meet this burden. The disputed information is largely factual, and does not constitute attorney opinion relating to the merits of this case. LDS requires a full disclosure of facts in order to support its claims and defenses that would likely outweigh any protection that arguably could attach.